UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUKE HANSEN, et al., Plaintiffs, v. BOYNE USA, INC., et al., Defendants. | CASE NO. C24-1851JLR<br>ORDER |

## I. INTRODUCTION

Before the court is Defendants Boyne USA, Inc. ("Boyne USA") and Big Sky Resort, LLC's ("Big Sky Resort") (together, "Defendants") motion to dismiss this action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, to transfer this action to the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1404(a). (Mot. (Dkt. # 10); Reply (Dkt. # 16).) Plaintiffs Luke Hansen, Matthew Hansen, and Darcy Hansen (together, "Plaintiffs") oppose the motion. (Resp. (Dkt. # 14).) Each party also filed supplemental briefing.

(Hansen Supp. (Dkt. # 20); Boyne Supp. (Dkt. # 21); Hansen Supp. Resp. (Dkt. # 23); Boyne Supp. Resp. (Dkt. # 22).) The court has considered the motion, the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[1] the court GRANTS Defendants' motion to dismiss for lack of personal jurisdiction and ORDERS the parties to submit supplemental briefing regarding whether this matter should be transferred to the District of Montana under 28 U.S.C. § 1631.[2]

## II. BACKGROUND

This action arises from a snowboarding accident at Big Sky ski resort in Montana in which Plaintiff Luke Hansen, a 24-year-old lifelong Washington resident, suffered catastrophic injuries. (*See generally* Compl. (Dkt. # 1).) Mr. Hansen alleges that his injuries were caused by the negligent design, construction, and maintenance of a terrain park obstacle at Big Sky. (*Id.* ¶ 1.1.) Plaintiffs Matthew Hansen and Darcy Hansen are Mr. Hansen's parents. (*Id.* ¶ 1.2.) They, too, are lifelong Washington residents. (*Id.*) The court sets forth the relevant background below.

### A. Defendants Boyne USA and Big Sky Resort

Defendant Big Sky Resort, a privately-held Michigan limited liability company, operates the Big Sky ski resort where Mr. Hansen suffered his injuries.[3] (Lambert Decl.

---

[1] Plaintiffs request oral argument; Defendants do not. The court concludes that oral argument would not assist it in resolving the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Defendants also move to "strike or disregard the factual allegations in Plaintiffs' opposition that are unsupported by admissible evidence." (Reply at 5 n.3.) Because the purportedly unsupported allegations are not material to the court's decision on Defendants' motion to dismiss, the court denies Defendants' motion to strike.

[3] The court refers to the corporate defendant as "Big Sky Resort" and to the Montana ski resort as "Big Sky."

(Dkt. # 12) ¶ 6; *see* Big Sky Discl. (Dkt. # 7).) Its sole member, Defendant Boyne USA, is a privately-held Michigan corporation with its principal place of business in Michigan. (Lambert Decl. ¶ 4; Boyne Discl. (Dkt. # 6); Big Sky Discl.) Big Sky Resort has no property, office, or business in Washington. (Lambert Decl. ¶ 6.)

Boyne USA is "a collection of independent mountain resorts and destinations across North America." (Lambert Decl. ¶ 3.) It does not directly own any property in Washington or have an office in Washington. (*Id.* ¶ 4.) Each Boyne USA resort operates through an independent legal entity which, like Big Sky Resort, is owned directly or indirectly by Boyne USA. (*Id.* ¶ 5.) The only Boyne USA resort in Washington is the Summit at Snoqualmie ("the Summit"), which is owned and operated by Ski Lifts, Inc. ("Ski Lifts"), a Washington corporation with its principal place of business in Washington. (*Id.* ¶ 7.) Between 1997 and 2018, Boyne USA also owned an interest in the Crystal Mountain ski resort near Mount Rainier. (*See id.* ¶ 8; *see also* Compl. ¶¶ 2.19-2.20.) Boyne USA's President of Western Operations has owned a home in Washington since at least 1999 (*see* Prince Decl. (Dkt. # 14-3) ¶ 2); and its Senior Vice President of Snow Sports lives in Washington (*id.* ¶ 6).

Boyne USA and its affiliated resorts provide a central website that links to the website for each Boyne USA resort. (*See* Prince Decl. ¶ 8 (citing https://www.boyneresorts.com/).) Defendants do not specify which entity is responsible for maintaining the central Boyne USA resort website. (*See generally* Lambert Decl.) Plaintiffs point out, however, that the terms and conditions for the Boyne USA website

state that the website is provided by "Boyne USA, Inc., d.b.a. Boyne Resorts and all affiliated companies, resorts, and brands[.]" (Resp. at 30 (citing Prince Decl. ¶ 8).)

Boyne USA asserts that it does no direct marketing or social media marketing. (Lambert Decl. ¶ 9.) Instead, according to Boyne USA's Chief Marketing Officer, "the marketing activities of all Boyne USA resorts are decentralized and conducted independently by Boyne USA subsidiaries." (*Id.*) Thus, Big Sky Resort has its own marketing team that is employed by Big Sky Resort and is responsible for marketing and promoting Big Sky. (*Id.* ¶ 10.) Similarly, Ski Lifts has its own marketing team that is responsible for marketing and promoting the Summit. (*Id.* ¶ 11.)

A Boyne USA resort may send its known guests—that is, individuals who visited the resort and bought a lift ticket or pass—email messages that include marketing information regarding other Boyne USA resorts. (*Id.* ¶ 20.) For example, the Summit might send its known guests an email message that promotes Big Sky, and Big Sky might send its known guests an email message that promotes the Summit. (*Id.*) A person who is a known guest at both the Summit and Big Sky may receive marketing emails from both resorts. (*Id.*) Defendants assert that Big Sky Resort does not engage in advertising campaigns that are specifically targeted at Washington. (*Id.* ¶ 21.) Instead, it primarily uses national advertising campaigns that are sent only to its known guests. (*Id.*) Within such a campaign, however, known Big Sky guests associated with Washington addresses might receive content referring to flights from Seattle to Bozeman, Montana, while known Big Sky guests associated with Massachusetts addresses might receive content referring to flights from Boston to Bozeman. (*Id.* ¶ 22.)

Big Sky and the Summit also have public Facebook pages on which they promote themselves and other Boyne USA resorts. (*See, e.g.*, Prince Decl. ¶ 7 (screenshots of Facebook posts by Big Sky in 2009 and 2014, by Crystal Mountain in 2011 and 2015, and by the Summit between 2013 and 2020).)

**B. The Ikon Pass**

Boyne USA does not sell a ski pass that provides unlimited access to all of its resorts. (Lambert Decl. ¶ 12.) Instead, access to all of the Boyne USA resorts is available only by purchasing an Ikon Pass, which is sold online through a separate company, Alterra Mountain Company ("Alterra"). (*Id.* ¶¶ 2, 13.) Each Boyne USA resort's website includes a link to purchase an Ikon Pass. (Prince Decl. ¶ 9.) Boyne USA receives a portion of the income from sales of Ikon Passes based on the number of Ikon Pass holders that visit Boyne USA's resorts. (Lambert Decl. ¶ 17.)

**C. Mr. Hansen**

Mr. Hansen purchased an Ikon Pass for the 2021-22 ski season on November 13, 2021. (*See* Lambert Decl. ¶ 16, Ex. B.) The first and only time Mr. Hansen used his Ikon Pass was at Big Sky on March 4, 2022, the day he was injured. (*Id.* ¶ 24.) The incident at Big Sky left Mr. Hansen "a C-6 quadriplegic with no motor function or ability to feel sensation below the fracture site" and, as a result, he now needs "24/7 care." (Hansen Decl. (Dkt. # 14-1) ¶ 7; *see also id.* ¶¶ 8-13 (describing how his injury has affected his life).) Mr. Hansen's injury makes travel "physically and logistically challenging" due to risks of infection and skin and pressure sores; difficulty transferring to a plane or car seat; his need for specialized equipment; and autonomic dysreflexia,

which can be dangerous during long trips. (*Id.* ¶¶ 14-16.) He now receives monthly disability benefits of $1,096 per month, or $13,152 per year, and relies heavily on his parents for financial assistance. (*Id.* ¶¶ 17-19.)

Mr. Hansen recalls that he regularly saw Big Sky advertised at the Summit and at Crystal Mountain, as well as in "digital marketing [he] received after frequenting those slopes." (*Id.* ¶ 2.) He does not identify what types of advertising he saw at the Summit and Crystal Mountain; does not describe the digital marketing he received; and says nothing about when he encountered the advertising and digital marketing. (*Id.*) Mr. Hansen also makes no representation that any of the advertisements or marketing messages he saw induced him to visit Big Sky in March 2022. (*See generally id.*; Resp.)

## III. ANALYSIS

The primary issue before the court is whether a federal court in Washington can exercise personal jurisdiction over two Michigan corporations in an action brought by Washington plaintiffs arising out of a snowboarding accident that occurred in Montana. (*See generally* Compl.; Mot.) As discussed below, the court concludes that it cannot.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of showing jurisdiction is proper. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG*

*Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)). The court does not assume the truth of allegations in the complaint that are contradicted by the defendant's declarations or affidavits. *See LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). Factual disputes, however, are resolved in the plaintiff's favor. *Id.* If a court concludes it lacks personal jurisdiction, it may transfer the action to another court in which the action could have been brought if doing so is in the interest of justice. 28 U.S.C. § 1631.

A federal court has personal jurisdiction over a defendant in a diversity case "to the extent the forum state's law constitutionally provides." *Yamashita*, 62 F.4th at 502 (quoting *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990)). Washington grants courts the maximum jurisdictional reach permitted by due process. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004); RCW 4.28.185. Whether the exercise of jurisdiction satisfies due process turns on "the nature and extent of the defendant's relationship to the forum State." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 826 (2024) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

A state court can exercise personal jurisdiction over a defendant if "the defendant has 'minimum contacts' with the forum—which means that the contacts must be 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Ford*, 592 U.S. at 358 (cleaned up)). General personal jurisdiction "comes into play when a defendant is 'essentially at home' in the forum

state[,]" such as when the company's place of incorporation and principal place of business are in the forum state. *Id.* (quoting *Ford*, 592 U.S. at 358). Specific personal jurisdiction, meanwhile, applies when the defendant has sufficient "case-linked" contacts with the forum state. *Id.* (quoting *Ford*, 592 U.S. at 358).

Here, Plaintiffs argue only that the court has specific personal jurisdiction over Defendants. (*See* Resp. at 3.) To determine whether a defendant is subject to specific jurisdiction, courts in the Ninth Circuit apply a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Davis*, 71 F.4th at 1161-62 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden of meeting the first two prongs while the defendant shoulders the burden on the final prong." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).

**B. "Arises Out Of or Relates To"**

The court begins with the second prong of the specific jurisdiction test and finds it dispositive. The second prong requires the plaintiff to show that the claim at issue "arises out of or relates to the defendant's forum-related activities[.]" *Id.* at 1161-62 (quoting *Schwarzenegger*, 374 F.3d at 802). Plaintiffs do not argue that their injuries arose from

Defendants' contacts with Washington—they assert only that the injuries relate to those contacts. (*See* Resp. at 46.)

The Supreme Court's most recent guidance regarding specific personal jurisdiction appears in *Ford Motor Co. v. Montana Eighth Judicial District Court* ("*Ford*"), 592 U.S. 351 (2021). The plaintiffs in *Ford* suffered injuries in their home states (Montana and Minnesota) in accidents they alleged were caused by defects in their Ford cars. *Id.* at 357. They then sued Ford in their home states. *Id.* at 357. Ford argued that the plaintiffs' home states lacked personal jurisdiction over the plaintiffs' claims because Ford had not "designed, manufactured, or . . . sold" the crashed cars in the plaintiffs' home states. *Id.* at 356. The Supreme Court disagreed. The Court observed that Ford is a global company that "markets, sells, and services its products across the United States and overseas[,]" and that engaged "in wide-ranging promotional activities," including distributing Ford parts across the country. *Id.* at 355-56. The Court reasoned that because Ford's extensive activity in the plaintiffs' home states made it more likely that the plaintiffs' injuries would occur there, courts in those home states had personal jurisdiction over lawsuits brought by their residents who had suffered injuries allegedly caused by Ford's cars. *Id.* at 362.

Notably, the *Ford* Court repeatedly emphasized the importance of the injury occurring in the forum state. *See id.* at 363 (holding that specific jurisdiction attaches "when a company like Ford serves a market for a product in the forum State and *the product malfunctions there*" (emphasis added)); *id.* at 355 ("When a company like Ford serves a market for a product in a State and *that product causes injury in the State to one*

*of its residents*, the State's courts may entertain the resulting suit." (emphasis added)); *id.* at 370 ("[H]ere, the plaintiffs are residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States. In sum, each of the plaintiffs brought suit in the most natural State[.]"). The Ninth Circuit has since acknowledged *Ford*'s emphasis on the injuries that occurred in the forum state. *See Yamashita,* 62 F.4th at 505 (noting that the exercise of jurisdiction in the *Ford* plaintiffs' home states "was fair to Ford because, by 'extensively market[ing]' the car models at issue in the forum states, Ford incurred an obligation to ensure that the models were 'safe for their citizens to use there.'" (quoting *Ford*, 592 U.S. at 368)); *Johnson v. UBS AG*, 860 F. App'x 531, 533 (9th Cir. 2021) ("For example, in *Ford*, specific jurisdiction over a nonresident defendant was proper because the defendant 'systematically served a market in [the forum states] for the very vehicles that the plaintiffs allege[d] malfunctioned and injured them in those states.'" (quoting *Ford*, 592 U.S. at 365)).

The Fourth Circuit discussed *Ford*'s emphasis on the place where the plaintiff's injury occurred in *Wallace v. Yamaha Motors Corp., U.S.A.*, No. 19-2459, 2022 WL 61430 (4th Cir. Jan. 6, 2022). In that case, the plaintiff was a resident of South Carolina, and the defendant motorcycle distributor maintained its principal place of business in California. *Id.* at *1. The plaintiff brought suit in South Carolina for injuries she suffered in a crash in Florida that she alleged was caused by defects in the defendant's motorcycle. *Id.* There was no dispute that the defendant had availed itself of the privilege of conducting business in South Carolina and that jurisdiction in South Carolina

would be reasonable. *Id.* at *3. Nevertheless, the Fourth Circuit concluded that South Carolina could not exercise specific personal jurisdiction over the defendant. *Id.* at *4. Noting that the Supreme Court "repeatedly emphasized" in *Ford* "that the injuries occurred in the forum states[,]" the Fourth Circuit held that although *Ford* might allow the plaintiff to sue the defendant in Florida, where the crash occurred, it did not allow her to sue the defendant in South Carolina. *Id.* (citing *Ford*, 592 U.S. at 363, 365).

Based on these authorities, the court concludes that the exercise of "related to" specific jurisdiction under *Ford* requires that the plaintiff's injury take place in the forum state. As a result, Plaintiffs, whose claims are based on Mr. Hansen's injury in Montana, cannot rely on *Ford's* "related to" test to support the exercise of personal jurisdiction in Washington—even assuming that Defendants purposefully availed themselves of the benefits of conducting activities in Washington. Therefore, the court grants Defendants' motion to dismiss or transfer this matter for lack of personal jurisdiction.

Plaintiffs argue in their supplemental briefing that courts have, post-*Ford*, found specific personal jurisdiction in the plaintiff's home state where the plaintiff's injury occurred outside of the forum state. (*See generally* Hansen Supp.) Plaintiffs principally rely on on *Dodd v. Textron, Inc.*, a case decided in this District in 2022. (*Id.* at 1-2 (discussing *Dodd v. Textron, Inc.*, No. C21-5177BHS-TLF, 2022 WL 392442 (W.D. Wash. Feb. 9, 2022)).) In that case, the Washington resident Plaintiffs sued an out-of-state company and its subsidiary in Washington for injuries they suffered in Oregon when an off-road vehicle they purchased in Idaho rolled over. *Dodd*, 2022 WL 392442, at *1. The defendants moved to dismiss for lack of personal jurisdiction, arguing that

their Washington contacts did not relate to the Oregon accident. *Id.* In holding that the Washington court could exercise personal jurisdiction, the court repeatedly emphasized that the plaintiffs purchased the off-road vehicle only after seeing an advertisement for the vehicle in Washington. *See, e.g.*, *id.* (noting plaintiff alleged that the defendants' advertising of the off-road vehicle "caused the Dodds to purchase the vehicle"); *id.* at *3 (noting that Plaintiffs purchased the vehicle "based on" the subsidiary's contacts with Washington); *id.* at *4 ("In this case, as in *Ford*, the Dodds are residents of the forum state, Washington, and purchased the relevant product . . . based on advertisements they viewed in the forum state."); *id.* (noting that the plaintiffs purchased the off-road vehicle "based on [the subsidiary's] advertising of the exact same product in Washington"); *id.* at 5 ("Most importantly, the Dodds would not have purchased the [vehicle] if not for [the subsidiary's] contacts with Washington."). Here, in sharp contrast to *Dodd*, Plaintiffs do not argue that Defendants' contacts with Washington caused Mr. Hansen's injury. (*See* Resp. at 45-46 (arguing only that Plaintiffs' injuries "relate to" Defendants' Washington contacts).) The court therefore finds *Dodd* readily distinguishable from the case now before it.

Plaintiffs also rely on *Duell v. Alaska Airlines, Inc.*, a decision by the Washington Court of Appeals. (*See* Hansen Supp. at 5-6 (discussing *Duell v. Alaska Airlines, Inc.*, 530 P.3d 1015 (Wash. Ct. App. 2023)).) Like the *Dodd* court, the *Duell* court ultimately concluded that the Washington plaintiff's claim for damages arose from the defendant's Washington contacts—specifically, the defendant's exclusive contractual dependence on Alaska Airlines, a Washington-based corporation, to market and sell seats on flights it

operated in Alaska, where the accident that eventually killed the decedent took place. *See Duell*, 530 P.3d at 905 (noting that the decedent "ended up on the PenAir flight *because of* PenAir's [capacity purchase agreement] with Alaska Airlines" (emphasis added)). Again, the instant case is readily disinguishable because Plaintiffs make no allegation that Defendants' Washington contacts caused Mr. Hansen's Montana injury.[4] Because Plaintiffs cannot establish that their injuries "arise from or relate to" Defendants' Washington contacts within the meaning of *Ford*, the court grants Defendants' motion to dismiss for lack of personal jurisdiction.

**C. Transfer**

Under 28 U.S.C. § 1631, a court that lacks personal jurisdiction over a civil action must transfer the action "if (1) the court to which the action is to be transferred would have had jurisdiction 'at the time [the action] was filed,' and (2) 'it is in the interest of justice' to transfer." *Munns v. Kerry*, 782 F.3d 402, 414 (9th Cir. 2015) (quoting 28 U.S.C. § 1631). A district court that finds that it lacks personal jurisdiction over an action abuses its discretion if it fails to determine whether transfer under § 1631 is warranted. *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990); *see also Tackett v. Montana Dep't of Pub. Health & Hum. Servs*., No. 22-35326, 2024 WL 2826223, at *2 (9th Cir. June 4, 2024) (holding that the district court should have transferred claims under § 1631 upon finding that it lacked personal jurisdiction). "[T]ransfer will generally

---

[4] The court has reviewed, but is not persuaded by Plaintiffs' other post-*Ford* cases, nearly all of which are state-court cases decided outside of the Ninth Circuit. (*See* Hansen Supp. at 2-6 (discussing cases).)

be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith." *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015).

This action could have been brought in the District of Montana because "a substantial part of the events or omissions giving rise to [Plaintiffs'] claim[s] occurred" there. 28 U.S.C. § 1391(b)(2). Neither party, however, has addressed the propriety of transfer under § 1631. (*See generally* MTD; MTD Resp.; MTD Reply.) Therefore, the court orders the parties to show cause by no later than **July 30, 2025**, why the court should not transfer this action to the District of Montana pursuant to § 1631.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss this action for lack of personal jurisdiction (Dkt. # 10). Plaintiffs' complaint is DISMISSED without prejudice and without leave to amend. The parties are ORDERED to show cause, by no later than **July 30, 2025**, why the court should not transfer this action to the District of Montana pursuant to 28 U.S.C. § 1631. Failure to timely respond to this order to show cause will result in the transfer of this action to the District of Montana.

Dated this 21st day of July, 2025.

JAMES L. ROBART
United States District Judge