CONNELLY
LAW OFFICES
John R. Connelly, Jr.
Micah R. LeBank
John B. McEntire, IV
Colin G. Prince
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100
*Attorneys for the Hansens*

# United States District Court
# District of Montana
# Butte Division

| | |
|---|---|
| Luke Hansen, Darcy Hansen, and Matthew Hansen, all individually,<br><br>Plaintiffs,<br><br>v.<br><br>Boyne USA, Inc., a Michigan corporation; Big Sky Resort, LLC, a Michigan LLC,<br><br>Defendants. | No. 2:25-cv-081-BU-BMM<br><br>First Amended Complaint<br><br>Demand for Jury Trial |

## Table of Contents

I. Introduction ........ 1

II. Parties ........ 2

A. Plaintiffs. ........ 2

B. Defendants. ........ 3

III. Jurisdiction and Venue ........ 3

A. The Court holds subject matter jurisdiction through diversity. ........ 3

B. The Court holds personal jurisdiction over Defendants. ........ 3

C. Venue is proper in Montana ........ 8

IV. Statement of Facts ........ 9

A. Luke began skiing at an early age and was an experienced snowboarder. ........ 9

B. Defendants manufactured a piece of recreational equipment that was unreasonably dangerous, failing to use even slight care. ........ 9

C. Defendants' deceptively dangerous piece of recreational equipment left Luke Hansen paralyzed for life. ........ 20

V. Causes of Action – Negligence and Gross Negligence ........ 22

VI. Relief Requested ........ 26

VII. Jury Demand ........ 26

## I. Introduction

This case is brought as a result of Defendants' decision to design, build, and maintain a dangerously out-of-proportion volcano-shaped piece of recreational equipment —a jump feature—in the middle of Big Sky's terrain park, leaving the young man who hit this feature on his snowboard (Plaintiff Luke Hansen) quadriplegic and bound to a wheelchair for life.

Luke grew up skiing with his family in Western Washington. He was a multi-sport athlete, playing baseball, soccer, and football. He loved the outdoors, and especially mountain sports, snowboarding and summiting Mt. Rainier, Mt. Baker, Mt. Adams, and Mt. St. Helens before finishing high school.

In Luke's senior year of college, as the 2022 ski season approached, he purchased a multi-resort ski pass that Defendant Boyne used to drive Washington residents like Luke to their other operations outside Washington. The pass, marketed to Luke in Washington and purchased in Washington, promised Luke the ability to ski at Boyne-owned resorts in Washington, as well as out-of-state destinations like Big Sky.

In early-March 2022, Luke and two friends drove to Big Sky for the weekend. On the first day just before lunch, Luke and his friends rode the Swift Current lift (on a portion of the mountain owned by Defendant Big Sky Resort, LLC) over a terrain park and inspected the jumps as they passed. They snowboarded down to the Powder Seeker lift (on a portion of the mountain owned by Defendant Boyne USA, Inc.) and rode it up to the edge of Lone Peak. From there, they snowboarded down to the terrain park and looked at the jumps from above.

Luke, on a snowboard and his two friends on skis, rode cautiously through the park, touching few of the jumps. At the end, Big Sky placed a volcano-shaped recreational feature that was not a jump but a hazard. This piece of recreational equipment was manufactured to have an extremely dangerous shape with concave sides and a


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

disappearing landing. What Luke could not know is that Defendants had, with gross negligence, constructed this exceptionally dangerous, volcano-shaped piece of recreational equipment without proper engineering and whose basic elements—the approach, transition, deck, and landing—were dangerously improper and extremely dangerous for goofy-footed snowboarders.

Worse, Defendants placed this manufactured volcano feature out-of-line with the manufactured jump above, forcing snowboarders who went off the preceding tabletop to approach the volcano at an angle. The misalignment combined with the exceptionally dangerous design created an extreme obstacle for all skiers and snowboarders—but was particularly dangerous to "goofy-footed" boarders, who were forced into a heel-side turn. Among that group was Luke Hansen. This manufactured recreational feature, requiring a backward-leaning approach and lacking a proper landing ramp, projected Luke up and backwards, throwing him far beyond any landing ramp, onto the parent slope, crushing his spine. He was pulled off the mountain, hospitalized for months, and paralyzed for life.

Defendants' grossly negligent failure to design and manufacture this volcano-shaped recreational feature with care and safety cost Luke Hansen his own body.

## II. Parties

### A. Plaintiffs.

2.1 Luke Hansen is a 24-year-old young man left quadriplegic at age 21 by injuries caused by Defendants' grossly negligent design, construction, and maintenance of an inherently dangerous terrain park equipment set in the slope as a jump. He has been a Washington resident his entire life.

2.2 Matthew and Darcy Hansen are Luke's parents and are both lifelong Washington residents.



CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

**B. Defendants.**

2.3 Defendant Boyne USA, Inc. ("Boyne"), is a privately-held Michigan-corporation that does business across the United States, including in Montana, where it has owned Big Sky Resort for decades—a resort that spans Gallatin and Madison counties.

2.4 Defendant Big Sky Resort, LLC, ("Big Sky Resort") is a privately-held Michigan limited liability company that is owned and controlled by Defendant Boyne, which owns and operates Big Sky Resort in Montana.

## III. Jurisdiction and Venue

**A. The Court holds subject matter jurisdiction through diversity.**

3.1 The Court holds subject matter jurisdiction because the parties are diverse and the suit involves more than $75,000 in damages. *See* 28 U.S.C. § 1332.

**B. The Court holds personal jurisdiction over Defendants.**

3.2 Defendant Boyne and its subsidiary, Defendant Big Sky Resort, are, for jurisdictional purposes, functionally the same—their contacts are imputed to one another. Defendant Boyne owns, operates, and markets a resort at Big Sky in Montana and has done so for decades. It is at this resort that Defendants built the volcano hazard that left Luke Hansen quadriplegic. In doing so, Defendant Boyne has purposefully availed itself of Montana law, purposefully directed contact with Montana, and purposefully solicited both in-state and out-of-state business to its Montana resort, including Luke Hansen. This lawsuit directly relates to and arises from those contacts, and the harms giving rise to this lawsuit took place in Montana.

3.3 At all times relevant, Defendant Boyne and its wholly-owned subsidiary, Defendant Big Sky Resort, LLC, have acted in concert together as one and as agents for one another.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

3.4 Defendant Boyne was founded in 1947 by Everett Kircher, and it remains controlled by his children, including CEO Stephen Kircher and Board Chairman Amy Kircher Wright.

3.5 According to Kircher, the company is the largest privately-owned resort company in the world, with sales exceeding a half-billion dollars in 2023.[1] Beyond ski resorts, Defendant Boyne owns golf courses, restaurants, hotels, and operates an apparel and equipment division.

3.6 In 1976, Defendant Boyne expanded its ski operations, purchasing Big Sky resort. Boyne owns and operates the resort through Defendant Big Sky Resort, LLC, an entity that is, like Boyne, Michigan-based.[2] Defendant Boyne created Defendant Big Sky Resort, LLC, and entirely dominates its subsidiary—it is the sole controlling member of the limited liability company.

3.7 Defendant Boyne publicly holds itself out as the owner and operator of the ski resort. When announcing a private stock offering in 2020, Defendant Boyne publicly stated that it "owns and operates" mountain resorts, including "Big Sky Resort."[3] And on Defendant Boyne's webpage detailing its own history, Defendant Boyne says its "portfolio currently includes" Big Sky Resort,"[4] and lists the resort on its webpage:[5]

[1] Norman Sinclair, *Resort Country*, DBusiness (Feb. 15, 2023) (https://bit.ly/4caUdA2).
[2] *See* Mont. Sec'y of State, *Business Search, "Big Sky Resort, LLC"* (June 25, 2024) (https://bit.ly/4eCCS5p).
[3] *See* Boyne Resorts, *Boyne Resorts Announces Private Offering Of $100 Million Of Additional 7.250% Senior Secured Second Lien Notes* (May 13, 2020) (https://bit.ly/4ej1Xlw). Note: public-facing statements usually refer to "Boyne Resorts," which is simply a doing-business-as trade-name for Boyne USA, Inc., rather than a separate entity.
[4] Boyne Resorts, *Our History* (June 17, 2024 (https://bit.ly/45vXDLH).
[5] Boyne Resorts, *Boyne Resorts* (June 17, 2024) (https://bit.ly/4c475Zg).


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

Boyne USA, Inc.
Big Sky Resort, Montana
Brighton Ski Resort, Utah
Boyne Highlands Resort, Michigan
Boyne Mountain Resort, Michigan
Cypress Mountain, British Columbia
Loon Mountain, New Hampshire
Pleasant Mountain, Maine
Sugarloaf, Maine
Summit at Snoqualmie, Washington
Sunday River Ski Resort, Maine




3.8 The same is true of Big Sky's website: "Everett Kircher purchased Big Sky Resort in 1976, adding to the Boyne Resorts family-owned properties."[6] Outside the entities themselves, the National Ski Areas Association (NSAA), the ski-resort industry group, publicly lists Defendant Boyne as the owner of Big Sky Resort.

3.9 This is no accident: Defendant Boyne is a NSAA member; and Defendant Boyne's CEO serves as the vice chair of the association's board of directors.

3.10 Defendant Big Sky's operations are overseen directly by Defendant Boyne's CEO—according to the company itself. In Defendant Boyne's own press release in 2018,

[6] Big Sky Resort, *Our History, 1976* (June 17, 2024) (https://bit.ly/3RyuY2N).


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

the company states "Big Sky Resort's overall operations" are the responsibility of its president and general manager, Taylor Middleton, but the operations are "with oversight from Stephen Kircher"—Defendant Boyne's CEO.[7] That was true then and remains true today.

3.11 The two entities—Defendant Boyne and Defendant Big Sky Resort, LLC—jointly own the resort's ski slopes. It is not Defendant Big Sky Resort, LLC, that owns all those skiable acres—it is Defendant Boyne USA, Inc., its agent, partner, and alter ego. Defendant Boyne directly owns Lone Peak and over 300 acres of the mountain:




3.12 The chair lift, Powder Seeker 6, on Defendant Boyne-controlled lands, is precisely the chair that Luke Hansen used to access the terrain park that caused his injuries.

---

[7] Business Insider, Press Release by Boyne Resorts, *Boyne Resorts Names Leadership of Newly Defined Regions* (Aug. 24, 2018) (https://bit.ly/3xAfqVB).

3.13 Defendant Boyne also owns and registers numerous Big Sky resort business names and trademarks,[8] with several listed here:

**BOYNE USA, INC. (F010814)**
Foreign Profit Corporation

*Active ABNs & TMs*

- 3 Forks Deli (A1134449)
- BASE CAMP YELLOWSTONE PARK (A154619)
- BIG SKY CENTRAL RESERVATIONS (A036346)
- Big Sky Discovery Center (A1139566)
- BIG SKY GOLF COURSE (A035821)
- BIG SKY OF MONTANA - BIG SKY SKI & SUMMER RESORT (A032678)
- Big Sky Resort Nordic Center (A1224180)
- Big Sky Resort Property Management (A1155890)
- Big Sky Snowsports School (A1155889)
- BIG SKY SPORTS (A035452)
- BIG SKY TRAM (A047385)
- Café & Bakery (A1134898)
- Deluxe Grill (A1134901)
- HUNTLEY LODGE (A052262)
- Huntley Mocha (A1139562)
- Huntley Trading Post (A1233378)
- Lodge at Big Sky Resort (A1155866)
- LONE MOUNTAIN TRAM (A047386)
- LONE PEAK LOGO (A216502)

3.14 Defendant Boyne owns the business name and trademark for the Lone Peak Tram (as well as the Lone Peak Logo), and it owns the business name and trademark for Big Sky Central Reservations, the resort's hotel reservation service, as advertised on the Big Sky resort:

---

[8] Mont. Sec'y of State, *Business Search*, "Boyne USA" (June 15, 2024) (https://bit.ly/4eCCS5p). Boyne holds an additional 25 business and trademark registrations not shown in the image above, including the Lone Peak Tram, Ski Montana, Summit at Big Sky, The Mountain Club at Big Sky Resort, Tram at Big Sky, Tram at Lone Peak, and others.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100




**C. Venue is proper in Montana**

3.15 On July 31, 2025, the Honorable James L. Robart transferred this case from the Western District of Washington to the District of Montana.

3.16 Venue is proper in the District of Montana because this Court holds personal jurisdiction over Defendants. *See* 28 U.S.C. § 1391(c)(2) (entities "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question").

3.17 Venue is also proper in the District of Montana because, at all relevant times, Defendant Boyne transacted business and owns land in Montana directly and through its subsidiaries and agents.

3.18 Venue is also proper in the District of Montana because a substantial portion of the events giving rise to the claim occurred in the District of Montana. *See* 28 U.S.C. § 1392(b)(2).


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

## IV. Statement of Facts

### A. Luke began skiing at an early age and was an experienced snowboarder.

4.1 Luke Hansen was a lifelong skier and snowboarder. He was also athletic. Luke began skiing at three-years old and snowboarding in sixth grade. He played sports all year long: baseball, soccer, basketball, and football. He also threw javelin and played football at his high school in Tacoma.

4.2 Throughout his childhood, Luke skied in Washington, routinely at Defendant Boyne's Snoqualmie Summit and Crystal Mountain properties.

4.3 After high school, Luke attended college at Washington State University, pursuing a degree in sports management.

4.4 In his senior year, before the 2021–22 ski season, Luke read marketing material created by Defendants and distributed throughout Washington State, promoting a multi-resort pass allowing access to all Defendant Boyne resorts.

4.5 The multi-resort pass promoted by Defendant Boyne allowed Luke to ski at Defendant Boyne's Big Sky resort if the occasion arose.

4.6 The occasion did arise. In early March 2022, Luke was finishing his last semester of college and had a free weekend. He and two friends drove to Big Sky to ski and snowboard.

### B. Defendants manufactured a piece of recreational equipment that was unreasonably dangerous, failing to use even slight care.

4.7 Unbeknownst to Luke, Defendants had acted with gross negligence, failing to use even slight care, in designing, manufacturing, and maintaining an unreasonably dangerous volcano-shaped feature, a piece of recreational equipment that was placed in the middle of the slope in one of its freestyle terrain parks.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

4.8 This volcano-shaped recreational feature was designed, manufactured, and maintained by Defendants for use by skiers and boarders. As noted, this volcano-shaped recreational feature was not properly designed, manufactured, or maintained; it was placed out of alignment with other manufactured recreational jumps; it was not built in accordance with the standards that exist for manufactured recreational jumps in terrain parks; it had concave sides; and was manufactured with an inappropriate landing area.

4.9 The recreational feature that injured Luke was a feature that did not exist in other terrain parks. As a non-standard volcano shape, this recreational equipment was circular, curved up from all sides, and contained a narrow, flat, disc-shaped top. The volcano-shaped recreational feature exhibited dangerous flaws revealing that safety was not a consideration when Defendants built it.

4.10 To understand the gravity of Defendant Boyne's gross negligence, and negligence, it is necessary to understand the basics of terrain parks and jumps—and the danger of injuries. For ski resorts, terrain parks have become a major and lucrative part of the business. Terrain parks are deliberately marketed to younger skiers and riders and have become such a draw that Defendants ran more than a half dozen terrain parks at Big Sky alone.

4.11 Resort companies, including Defendants, market their terrain parks to the public—particularly young men—using pictures of skiers and snowboarders jumping high in the air and inverted, sensationalizing the art of "getting after it" and encouraging young skiers to "go big, or go home."

4.12 Terrain parks are promoted using pictures of engineered jumps with appropriate safety considerations (e.g., properly angled takeoff and landing areas, as explained below), such as the features depicted in the X games or at the Olympics. The


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

recreational equipment at issue, however, lacked this engineering, was not built to any standard, and was made without safety considerations.

4.13 All design decisions, including the decision to engineer or build a jump with safety considerations in mind or a decision to ignore safety considerations, rest with the resort.

4.14 Terrain-park "features," when improperly built without appropriate landing areas, without proper take offs and without any engineering, are more dangerous than virtually any other part of the mountain, although that is not apparent to riders.

4.15 Given the dangers of terrain parks, it is essential that resorts adopt a careful and scientific approach to the design and manufacture of terrain park features.

4.16 Unfortunately, terrain-park quality varies widely from resort to resort, and the adoption of quantifiable engineering design of terrain parks has been resisted by Defendants Boyne and Big Sky, who have placed their own financial interests above the safety of skiers.

4.17 It is possible to design and build jumps with safety as the top priority.

4.18 This is done in competitions such as the X Games, the Olympic Games and other venues. It is critically important for the safety of the skiers and snowboarders.

4.19 In the exercise of reasonable care, resorts consult with experts to ensure their jumps are designed and built with safety as a top priority.

4.20 This is necessary because of the physics involved. It is now well known that jumps transform skiers into projectiles, propelling them into the air according to the manner in which the jump is constructed. That laws of physics apply to the projectile—the skier or boarder. Thus, incorporating engineering and an understanding of physics (including the forces exerted on riders on takeoff and landing) is critical.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

4.21 Given the available information known at the time, Defendants had a duty to design and construct their jumps and terrain park features to both decrease the risk of crashes and to mitigate injuries.

4.22 The principles of jump design and construction are widely studied and known to Defendants. Engineers and experts who study terrain parks are available for consultation to ensure that jumps share certain basic attributes: the start, the approach, the transition, the takeoff, the maneuver area, the landing, and the run-out:[9]




4.23 How these elements work together largely determines whether a jump is reasonably safe for use by the public. Where there is a failure to properly design these elements in concert with each other, it is known that maladjustments to any one feature may render a jump unreasonably dangerous. Failure to give any consideration to these issues is gross negligence.

4.24 As the NSAA Freestyle Terrain Notebook below shows, if a terrain-park builder makes a jump's take-off steeper, a rider will experience increased compression forces, a higher trajectory, a potentially shorter flight distance, and increased force on landing:[10]

[9] James McNeil, Mont Hubbard, and Andrew Swedberg, *Designing tomorrow's snow park jump*, Int'l Sports Engineering Assoc. at 2 (2012) (https://bit.ly/4aWcXT0).
[10] Nat'l Ski Areas Assoc., *Freestyle Terrain Notebook* at 9 (2015).


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100




Figure 7 Difference Between Takeoff Transitions

4.25 In designing and constructing features, Defendants also had a duty to create a reasonable margin of error. As the NSAA recognizes, designers should build a "margin for error" into the equation in order to reasonably accommodate what are referred to as "human factors"—i.e., the expectation that some skiers and riders will crash.

4.26 Defendants built an unreasonably dangerous, volcano-shaped piece of recreational equipment that created the likelihood of a crash and provided no margin of error. Defendants failed to take into consideration that, at the moment a rider takes off with a given initial velocity, his flight path, landing point and equivalent fall height are determined. (Equivalent fall height is a measure of force exerted on the rider at landing). Defendants' failure to give any consideration to this issue in placing this volcano-shaped piece of recreational equipment on its slope was grossly negligent.

4.27 Since a rider's flight path, landing point, and fall height are determined at takeoff, in the exercise of reasonable care, Defendants had a duty to design and build features that allow riders a reasonable range of variation in speed and trajectory as they approach takeoff. Properly built jumps include consideration for a proper take-off that is even, without ruts, proper width and which will properly allow the skier/snowboarder to


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

be propelled upward and forward without forcing him/her backwards. The landing area must be built so that the skier/snowboarder will not overshoot the jump and will come down safely without landing on "flat" snow. There is a great deal of science associated with properly built ski jumps. Shoving a manufactured recreational feature into the terrain park without any thought of this science or how the jump will act upon the skier/snowboarder is extremely dangerous and grossly negligent.

4.28 When equipment like Defendants' volcano-shaped recreational feature is poorly designed and built without any engineering or risk mitigation and haphazardly placed on a slope without safety considerations, they create the likelihood of a crash and provide riders with no margin of error for varying speed, angle, body position, or other factors. These failures in designing terrain park features are grossly negligent and impose large penalties on the rider, including severe and dangerous impacts if the velocity is outside this range.

4.29 An improperly designed jump creates the likelihood of a crash as it decreases the margin of error and increases the likelihood of injury. Engineering is required.

4.30 Jumps become too dangerous where the resort has created an approach that creates too much speed, a transition that exerts too much compression, a takeoff angle that fails to match the deck length, a landing that is too narrow or too short or misplaced, or a landing shape that exerts unacceptable forces (i.e., equivalent fall height) on the rider, a dangerous or deceptive position on the slope relative to other jumps or features, among other reasons. In this case, Defendants' volcano-shaped recreational feature created an extremely hazardous situation for a snowboarder, particularly one who rides goofy footed, as Luke Hansen did.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

4.31 Failing to exercise care in jump design and construction exposes riders to unnecessary risk by creating the likelihood of a crash or increasing the severity of impacts and is grossly negligent.

4.32 Defendants owed a duty to design and build terrain features in a manner that incorporated knowledge and understanding of the physics involved, including (as shown below) that any given terrain feature has lower-impact (green) and higher-impact zones (red) on a properly constructed landing ramp:




4.33 When, as here with the volcano-shaped recreational feature, a resort fails to properly design, construct, or maintain its terrain park; fails to take safety into consideration; and instead, simply throws a manufactured feature haphazardly into the path of skiers and snowboarders, it exposes riders not only to crashes, but high-impact crashes and correlating severe injuries. The terrain park makes it appear that the volcano-shaped recreational feature is a jump when in reality it is an exceptionally dangerous piece of equipment built without any thought of safety, without any engineering, without appropriate take-offs and landing areas, and without consideration of the fact that the


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

design may force their business invitees, whether skiers or snowboarders backwards when they use the "jump." Placement of recreational equipment in this manner constitutes gross negligence.

4.34 Defendants exposed their business invitees, including Luke Hansen, to unnecessary risk by manufacturing a feature with an improperly long approach, improperly angled takeoff, or improperly short deck length that causes riders to overshoot the landing ramp and strike the ground in the red "2nd high-impact zone" on the graphic above—or worse, on the parent slope.

4.35 It is well known and should have been considered by Defendants that striking the farther high-impact zone or parent slope is a serious risk particularly on smaller and medium sized-jumps. Built improperly, small and medium jumps are deceptively dangerous. Absent a proper landing ramp, a rider may, with small variations in speed, overshoot the "sweet spot" and land in the medium- or high-impact zones.

4.36 Defendants' failure to exercise care in the manufacture of the volcano-shaped recreational feature was grossly negligent. Care must be taken before simply manufacturing equipment that has absolutely no engineering and increases the likelihood of a crash. Certain types of features, such as the volcano-shaped equipment in this case, are too dangerous to install in a public terrain park.

4.37 It is well known that proper terrain-park design should include not only a margin of error that allows riders to avoid crashing, but also a design that will mitigate the severity of injuries that will foreseeably occur.

4.38 This is particularly important for snowboarders like Luke. Snowboarders landing from an improperly-built feature are more likely to fall backwards, and thus, more


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

likely to sustain axial skeleton injury—or, in simpler terms, the areas around the brain and spinal cord, and organs.

4.39 Apart from a feature's elements, in the exercise of proper care, resorts are required to design features that are not deceptive to riders, and thus, riders are able to accurately assess them.

4.40 Additionally, Defendants were grossly negligent in their failure to account for the risks associated with improper design and alignment of jumps when they placed the defective and exceptionally dangerous volcano-shaped recreational feature out of alignment with the preceding features in the terrain park.

4.41 A terrain park's design matters. Research reveals the single most important variable responsible for severe injury is not rider error, but terrain-park design: it is *primarily* the nature of the features and the design of terrain parks that leads to severe injury.

4.42 The physics comports with user experience. The design of the features within the terrain parks, including their dimensions, shape, or launch and landing angles are the variables most responsible for accident occurrence.

4.43 Constructing proper jumps accounting for safety is not prohibitively expensive.

4.44 Building well designed, safer jumps is no more laborious than building poorly designed, unsafe jumps.

4.45 Given the importance of proper design, construction and placement, it is evident that Defendants' volcano-shaped recreational equipment exhibited numerous design defects, hazards and safety concerns. Investigation after Luke's catastrophic injury reveals that Defendants exercised no care in positioning the volcano-shaped recreational


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

feature within the terrain park. Defendants placed the volcano-shaped feature below a tabletop jump, but mis-aligned to the rider's right. The misalignment forced riders to land the tabletop jump and then approach the volcano-shaped feature's takeoff at an unreasonably dangerous angle causing off-balance takeoffs.

4.46 Defendants exercised no care in manufacturing the volcano-shaped equipment's elements. The volcano's transition length, curvature, concave sides, takeoff angle, deck length, and landing, among other elements, were out of proportion, resulting in equipment that placed riders at extreme risk by throwing them off balance. The design structure of this volcano-shaped recreational feature and its placement were grossly irresponsible, unacceptably dangerous, and extremely hazardous.

4.47 Defendants exercised no care in manufacturing this circular piece of recreational equipment. As resorts know, some riders will "drift" after takeoff. A feature's deck and landing should be as wide as practical. A feature is safer where the landing is "flared"—i.e., wider at the landing. Defendants' volcano-shaped recreational feature, however, was so poorly designed it was functionally the opposite. The circular volcano shape deceptively placed riders on a trajectory not over the center (as a diameter) but off the side (as a tangent or secant). Defendants, therefore, created a dangerous landing ramp that effectively narrows or entirely disappears as the rider's flight path progresses, leaving him or her to strike the parent slope.

4.48 Defendants exercised no care in manufacturing this volcano-shaped recreational feature that put riders at extreme risk of entirely missing the landing-ramp, instead landing on the parent slope (i.e., off the feature entirely).


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

4.49 In designing, manufacturing, and placing the volcano-shaped recreational feature, Defendants exercised no care in considering injury mitigation. Defendants' actions were unreasonable, negligent, grossly negligent, reckless and wanton.

4.50 In designing and manufacturing this volcano-shaped recreational feature, Defendants exercised no care in considering the acceptable margins of error on approach and take-off.

4.51 In designing and manufacturing this volcano-shaped recreational feature, Defendants exercised no care in considering the increased danger to a goofy-footed (i.e., right-foot forward) snowboarder.

4.52 On information and belief, Defendants failed to correctly engineer the volcano-shaped piece of recreational equipment.

4.53 On information and belief, Defendants failed to consider or measure the equivalent fall height of this volcano-shaped piece of recreational equipment.

4.54 On information and belief, Defendants failed to measure the takeoff ramp angle or lip angle.

4.55 On information and belief, Defendants failed to measure or consider the deck or landing ramp lengths.

4.56 Defendants, at the expense of the health and safety of business invitees and in favor of their own financial interests, chose to build a volcano-shaped recreational feature that looked "cool" but was extremely hazardous, unreasonably dangerous, and had a complete disregard for the principles of safety by design. A hazard of this nature poses heightened risks to skiers and snowboarders above and beyond the risks inherently faced by skiers and snowboarders in a terrain park.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

**C. Defendants' deceptively dangerous piece of recreational equipment left Luke Hansen paralyzed for life.**

4.57 On March 4, 2022, Luke and two friends snowboarded the morning at Big Sky on land owned by Defendant Boyne USA, Inc.

4.58 Before heading in for lunch, they decided to travel through the terrain park controlled by Defendant Boyne.

4.59 Luke descended through the terrain park, and towards the end, he rode over a tabletop jump slow enough that his board never left the ground. Just after the tabletop was the volcano-shaped recreational feature—unlike any other feature at Defendant Big Sky's terrain park. The manufactured feature had no appropriate take off, no appropriate landing area, and was not an engineered jump. It was simply a volcano-shaped recreational feature placed on the slope in the middle of the terrain park. The height of the manufactured feature was such that it would launch a skier or snowboarder to a significant height. The sides were concave which would force a skier/snowboarder backwards. It was located at a point where a skier/snowboarder coming off the preceding tabletop jump would hit it at an angle, and it was not engineered or built in accordance with any applicable standards. Someone simply manufactured a volcano-shaped featured and placed it in the middle of the slope:





CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

4.60 As discussed above, Luke was a lifelong skier and snowboarder. He fully understood his own abilities, as well as those of his friends. He had surveyed the terrain park upon entry and reviewed the available maps, as well as all posted instructions. Luke approached the jump at a responsible, safe speed, and was attempting no tricks, grabs, spins, or inversion.

4.61 Due to Defendants' failure to exercise any care in designing and building the volcano-shaped recreational feature, as detailed above, the feature launched Luke backwards and far beyond *any* part of the landing ramp, causing him to land on his head and neck.

4.62 Defendants owed a duty in designing and constructing a proper feature to be used as a jump and to account for speed, height, take-off, landing area length and other factors to ensure the safety of persons using the feature. This was never done, and the volcano-shaped recreational feature did not have an appropriate landing area.

4.63 Absent Defendants' grossly negligent design, manufacture, and maintenance of this piece of recreational equipment, Luke would not have been injured.

4.64 The crash caused a "burst fracture" in Luke's C-6 vertebrae, smashing the vertebrae apart and driving it into his spinal cord. That was the last time Luke would feel most of his body—he was left quadriplegic.

4.65 Defendants removed the defective and dangerous volcano-shaped equipment after Luke's tragic injury.

4.66 Luke was stabilized and airlifted to Harborview Medical Center, where he was hospitalized until late May.

4.67 After his release, confined to a wheelchair, Luke could not return to his parents' home, which was inaccessible, and was forced to relocate to a rental house.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

4.68 As a result of his injuries, Luke was forced to take a year away from school. He also could not return to his home as he could not negotiate the stairs.

4.69 Since that time, Luke has been engaged in constant health care and physical therapy and has had to deal with all of the issues that accompany being a paralyzed quadriplegic. He cannot drive; he cannot travel alone; he cannot transport himself from his wheelchair to a bed. To urinate, Luke must catheterize himself, and to defecate, Luke requires an anal-suppository containing a powerful laxative to initiate the process. He cannot insert it himself.

4.70 Luke has serious issues with temperature regulation, with skin care, with elimination and caring for himself. He needs attendant care for his needs and for his safety.

4.71 To the extent Defendants required Luke to sign any waiver, it is void and unenforceable because: (a) Defendants' gross negligence cannot be waived under Montana law; (b) waivers do not apply to equipment defect claims under §27-1-753(4); (c) any waiver failed to disclose the specific hazards of the defective volcano-shaped recreational feature; and (d) waivers remain subject to legal challenges under §27-1-753(3)(d).

## V. Causes of Action – Negligence and Gross Negligence

5.1 Plaintiffs incorporate the paragraphs above as relevant to the claims below.

5.2 Luke was a business invitee of Defendants at the time of his crash.

5.3 Defendants owed a duty to take reasonable care to ensure that the recreational equipment they manufactured would not expose riders—business invitees—to an extreme risk of serious injury beyond those inherent in skiing and snowboarding.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

5.4 Defendants owed a duty of reasonable care to construct, design, operate, maintain, inspect, and repair defective terrain park features in accordance with applicable safety standards and practices.

5.5 Defendants owed a duty of reasonable care to properly warn business invitees regarding its failure to follow proper engineering, design and safety standards applicable to terrain park features.

5.6 Defendants had a duty to warn, advise, and inform users of all defects that could expose them to extreme risk of injury beyond those inherent in skiing and snowboarding.

5.7 Defendants owed a duty to close all jumps that expose users to an extreme risk of injury beyond those inherent in skiing and snowboarding.

5.8 Defendants owed a duty of reasonable care to prevent access to its terrain park when the snowpack is too hard for users to land safely when using the park features.

5.9 Defendants owed other duties of reasonable care as contained in Montana Code Annotated § 23-2-733.

5.10 Pursuant to Mont. Code Ann. § 27-1-753(4), the Montana Recreational Opportunity Act does not apply to this action. That subsection excludes from the Act any cause of action based on the design, manufacture, provision, or maintenance of sports or recreational equipment. The volcano-shaped feature constitutes recreational equipment, and Plaintiffs' claims are based on Defendants' negligent design, construction, provision, and maintenance of that equipment.

5.11 Defendants breached duties owed to Luke by building an unreasonably dangerous volcano-shaped recreational feature without exercising appropriate care or even slight care, as described above.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

5.12 Defendants breached the duties owed to Plaintiff by failing to take appropriate care or even slight care to warn Luke, among others, about the existence and location of its unnecessarily dangerous jump.

5.13 Defendants breached the duties owed to Plaintiff by placing its volcano-shaped recreational feature in a location that increased the scope of risk of serious injury far beyond that inherent in skiing and snowboarding.

5.14 By way of example and not limitation, the design and placement of the volcano-shaped recreational feature that could launch a reasonably careful user moving at an appropriate speed and taking all available precautions posed heightened risks exceeding and independent of: snow conditions, avalanches, potential collisions with natural surface and subsurface conditions, collisions with artificial structures, and other inherent dangers as laid out by Montana Code Annotated § 23-2-702.

5.15 The extreme risks created by Defendants' defectively designed equipment were not inherent to skiing or snowboarding. Inherent risks include natural terrain, changing conditions, and collisions with natural or properly maintained features. The catastrophic injury risk from Defendants' improperly engineered recreational equipment—built without consideration for takeoff angles, landing zones, or feature alignment—exceeded and was independent of the inherent risks of skiing and boarding.

5.16 Defendants breached the duties owed to Plaintiff by failing to account for safety considerations, physics, engineering, human factors, feature alignment, and risk mitigation and designing, constructing and placing the extremely dangerous volcano-shaped recreational feature and were accordingly negligent and grossly negligent in these and other respects.


CONNELLY LAW OFFICES
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

5.17 Defendants breached the duties owed to Plaintiff by failing to take even slight care to restrict access to this piece of recreational equipment despite the dangerously hard snowpack.

5.18 Any liability waiver is void based on Defendants' gross negligence. Defendants' complete failure to exercise even slight care in designing, constructing and maintaining the volcano-shaped recreational feature constitutes gross negligence and reckless disregard for safety, which cannot be waived under Montana law.

5.19 As a direct and proximate result of the violations and failures described above, Plaintiff Luke Hansen suffered permanent, continuing, and irreparable damages, including a C-6 burst fracture, quadriplegic paralysis, and damaged vocal cords. He has also suffered economic loss, loss of enjoyment of life, physical and emotional damages, pain and suffering, emotional distress, mental anguish, medical expenses, attendant care expense, and other special and general damages, which will be proven with specificity at the time of trial. These damages have continued to the present, are permanent, and will continue for the rest of Luke's life.

5.20 As a direct and proximate result of the violations and failures described above, Plaintiffs Matthew and Darcy Hansen, Luke's parents, have incurred substantial medical expenses, economic loss, and have spent numerous hours providing medical care, attendant care, and alterations to their home and other property, and additional general and special damages.

5.21 Plaintiffs Matthew and Darcy Hansen have suffered damage to their relationship with their son, Luke, and have suffered grief, emotional distress and anguish, which are continuing and will continue into the future and are, accordingly, permanent in nature.


Connelly Law Offices
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100

5.22 Alternatively, if the volcano-shaped recreational feature is not deemed "equipment" under §27-1-753(4), Plaintiffs' claims survive because the extreme hazards created by Defendants' conduct and its manufactured volcano feature were not inherent risks of skiing, but unreasonable risks created by Defendants' failure to exercise reasonable care.

## VI. Relief Requested

Plaintiffs seek the following relief:

(a) General and special damages to be proven at trial;

(b) Reasonable attorneys' fees and costs;

(c) All applicable interest on the judgment; and

(d) Other and further relief as the Court deems just.

## VII. Jury Demand

Plaintiffs hereby demand a jury for all issues so triable. *See* Fed. R. Civ. P. 38(b).

Dated: November 26, 2025.

Connelly Law Offices
Attorneys for the Hansen Family

s/ Jack Connelly
John R. Connelly, Jr., Wash. Bar No. 12183
Micah R. LeBank, Wash Bar. No. 38047
John B. McEntire, IV, Wash. Bar No. 39469
Colin G. Prince, Wash. Bar No. 43166
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100
*Admitted Pro Hac Vice*

Joyce, MacDonald, Haynes & Johnston, PLLP
Montana Counsel for the Hansen Family

s/ Michael Haynes
Michael W. Haynes
100 E. Broadway Street, 1st Floor
Butte, Montana 59701
406.723.8700
*Admitted to Practice in Montana*

**Service Certificate**

I certify that, on November 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify all represented parties, including the following opposing counsel: Ian McIntosh, Joseph Norena, and William Morris.

s/ John B. McEntire, IV
John B. McEntire, IV, Wash. Bar No. 39469
2301 North 30th Street
Tacoma, Washington 98403
253.593.5100
*Admitted Pro Hac Vice*